## White v. Shepherd.

(Decided October 20, 1910.)

### Appeal from Whitley Circuit Court.

Contract—Signing Note in Blank—Agreed Sum—Filling in Excessive Sum—Liability of Payor.—Where appellant agreed with appellee that he would sign a note for appellee's stock of goods which appellee desired to sell to appellant's son-in-law, not to

exceed $350.00, payable twelve months after date, and signed a note with the amount left in blank with the agreement it was not to exceed $350.00 he could not be required to pay the excess over $350.00 with interest thereon after the maturity of the note.

B. B. SNYDER, GILLIS & GILLIS and J. B. SNYDER for appellant.

W. R. HENRY and K. D. PERKINS for appellee.

OPINION OF THE COURT BY JUDGE NUNN—Reversing.

A few days prior to August 1, 1908, appellee, Shepherd, was a merchant with a small amount of goods in a store in Wofford, Kv., and J. R. Morgan, a son-in-law of W. B. White, appellant, was a coal miner and resided about one mile from Wofford. He and Shepherd began to talk about a trade with reference to Shepherd's store. Shepherd agreed to sell him his stock of goods, provided appellant would become his surety for the purchase price. Morgan endeavored to get Shepherd to accept his horse and buggy on the stock for $150 and Shepherd led him to believe he would, probably, accept them at that price. At this juncture, Morgan hitched his horse to the buggy and he and appellee went to Pineknot about twenty-six miles away, to the home of appellant who was also a merchant. They arrived Wednesday and remained at appellant's until Friday morning. All agree that there was nothing said about the trade between Morgan and Shepherd until Friday morning when Morgan spoke to his father-in-law with reference thereto in the presence of appellee. Appellant asked about what the stock of goods would invoice. Morgan answered about $300 or $350 and appellant says Shepherd agreed to this, but Shepherd testified that he thought it would invoice about $400. Appellant testified that he agreed to become his son-in-law's surety, provided the stock did not exceed $350. The note was then prepared by his son-in-law in the following form, to-wit:

"Wofford, Ky., Aug. 1, 1908.

"Twelve months after date I promise to pay to J. R. Shepherd $ .........................................
for value received of him.

"W. B. WHITE."

Appellant signed this note as above indicated, leaving room above his name for J. R. Morgan to sign. There was no one present except the three persons named, and they all agree in their testimony that there was nothing said one way or the other, about interest. Morgan and appellee returned to Wofford on that day and began the invoice the next morning, Saturday, and concluded it about dark, and Morgan then filled out the blank left in the note with the following words and figures, to-wit:

"$459.96, Four hundred and fifty-nine dollars & 96-100." He then handed the note to Shepherd who gave it back to him saying that he must have interest and for him to insert the words "at 6 per cent." Morgan did as requested and returned the note to Shepherd.

This action was instituted upon the note against Morgan and appellant, White. White answered denying liability: First, because the note was executed for $459.96, when it was agreed that the note should not be for more than $350. Second, because the words "at 6 per cent." were inserted in the note without his knowledge or consent, thereby changing his liability. The evidence was as above recited. The verdict was for the amount of the note less the credits indorsed thereon, and an additional credit of $20.00. The court gave an instruction to the effect that if appellant, White, notified or stated to Shepherd that he would not become surety on the note if it was to be for more than $350, and Shepherd, notwithstanding this, accepted the note after being filled out by Morgan for a greater sum without the knowledge or consent of White, they would find for White. After a careful examination of the testimony upon this point, we are of the opinion that it justified the finding of the jury. We are confident that White was under the impression that the note would not amount to more than $350, but he did not state to Shepherd or in his presence that he would not become surety for his son-in-law for any greater sum than $350. From all that was said, the impression was left upon Shepherd's mind that White would become his son-in-law's surety for the amount that the stock of goods invoiced.

The court refused to grant appellant an instruction upon the question with reference to the insertion of the words "at 6 per cent." We are of the opinion that the court erred in this. When White signed the note his liability was fully and clearly limited and understood by

all the parties to the note. It was all in writing, except the amount and White authorized that only to be inserted. It was not made known to him that the note was to draw interest from date, there was not one word said by any of the parties upon that question. He is presumed to have known, however, that it would bear 6 per cent. interest after its maturity. In Duker v. Franz, 7 Bush, 273, it is said:

"It seems to be the correct doctrine that an alteration of a note after its execution and delivery will render it void in case said alteration is to any degree material."

In Marion National Bank v. Russell, 14 Ky. Law Rep., 368, it is said:

"A note materially altered by the holder is useless for any purpose if the alteration was made without the knowledge or consent of the maker."

In the case at bar, Shepherd did not insert the words "at 6 per cent.," but after he received the note filled out with the amount the goods invoiced, he handed it back to Morgan and directed him to add the words "at 6 per cent.," and Morgan did so without the knowledge or consent of White. The insertion of these words made the note bear 6 per cent. interest from its date, and the interest on $459.96 at 6 per cent. for twelve months is to some degree material. Appellee's counsel contend that the addition of the words "at 6 per cent." meant that the note was to bear interest at that rate from maturity, and that appellee only took judgment on the note with interest beginning at that time. It appears he changed his mind between the filing of the petition and the securing of the judgment. He asked in the petition for a judgment covering the amount of the note with 6 per cent. interest thereon from the first day of August, 1908, the date of the note, until paid. This court settled this question in the case of Miller v. Cavanaugh, 99 Ky. 377. The language of the note that was in litigation in that case, is very similar to the language in the note now under consideration. The court in that case said:

"The language specifying interest shows that it was the intention of the parties that the note should draw interest from date. We conclude that the parties were contracting for interest on the note for a period of time when the note would not draw interest except for such contract, and not for a time subsequent to the date when the note was to be paid. It was useless to make a con-

tract for interest after the default of payment, when the law would allow interest on the note for such time."

Further, in the case of Warren, et al. v. Fant's Trustee, 79 Ky. 1, this court said:

"The words added were written on the face of the paper which contained the obligation, and above the signatures of obligors; they were put there at the instance of the obligee to secure a benefit that would not have been secured without them; the appellee insisted that the sureties were bound by them, refused to accept what he would have been entitled to without them, and in his original petition declared on them as a part of the writing. This is sufficient to show that the appellee regarded them as a part of the obligation, and that they are to be so regarded is abundantly established by authority."

In the case of Locknane v. Emmerson, 11 Bush, 69, Emmerson signed a note as surety of Beal. When sued, Beal made no defense, but Emmerson answered alleging that after he signed and delivered the note to Beal, the principal, he took it to Terry, the payee, who refused to accept it because it did not contain a promise to pay interest from date, and that Beal, without his knowledge or consent, changed the note by inserting the words "said note to bear legal interest." This insertion was made, as stated, without the knowledge or consent of Emmerson, but with the knowledge of Terry who knew that Emmerson knew nothing about it. In that case the court determined that Emmerson was not liable on the note. The facts of that case are very similar to the ones in the case at bar. Upon the admitted facts with reference to the addition of the added words which increased the liability of White, the court should have given a peremptory instruction in behalf of appellant.

Therefore, the judgment of the lower court is reversed and remanded for further proceedings consistent herewith.